UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROMEO VALENTIN SANCHEZ,

    Petitioner,

v.    Case Nos.:  2:23-cv-834-SPC-NPM
                  2:17-cr-136-SPC-NPM

UNITED STATES OF AMERICA,

    Respondent.
_____/

## OPINION AND ORDER

Before the Court is Petitioner Romeo Valentin Sanchez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1), as supplemented (Doc. 4).[1]

## Background

In 2017, a woman reported to the Cape Coral police that Sanchez, her ex-boyfriend, was having sex with her 14-year-old sister. *United States v. Sanchez*, 30 F.4th 1063, 1067 (11th Cir. 2022). During the investigation, police seized two mobile phones belonging to Sanchez and learned that Sanchez used the phones to solicit pornographic images and videos from two minors. A grand jury charged Sanchez with two counts of enticing a minor to engage in sexual

---

[1] The Court cites to documents from Case No. 2:23-cv-834-SPC-NPM as "Doc. _" and documents from Case No. 2:17-cr-136-SPC-NPM as "Cr-Doc. _."

activity, two counts of enticing a minor to produce child pornography, and two counts of possession of child pornography. (Cr-Doc. 1). A superseding indictment later added a charge of committing a felony offense involving a minor while registered as a sex offender. (Cr-Doc. 71). Assistant Public Defender Russell Rosenthal entered his appearance as counsel for Sanchez, and Sanchez pleaded not guilty. The government extended one formal plea agreement, but Sanchez rejected it. An additional round of plea negotiations was unsuccessful.

After a five-day trial, the jury found Sanchez guilty as charged. (Cr-Doc. 134). The Court sentenced Sanchez to life plus ten years' imprisonment plus 25 years of supervised release. (Cr-Doc. 165). Sanchez appealed, and the Eleventh Circuit affirmed the conviction and sentence. (Cr-Doc. 189). Sanchez then timely filed the § 2255 motion currently before this Court.

## Legal Standards

### A. 28 U.S.C. § 2255

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be a surrogate for a direct appeal."

2

*Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating § 2255 relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice" (internal quotations omitted)). The petitioner bears the burden of proof on a § 2255 motion. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* Failure to show either *Strickland* prong is fatal. *See Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("a court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden,* 954 F.3d 1338, 1354 (11th Cir.

3

2020) (quoting *Strickland*, 466 U.S. at 689). The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickand*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, 'it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test.'" *Id.* (quoting *Strickland*, 466 U.S. at 693).

## DISCUSSION

Sanchez asserts four grounds of ineffective assistance of trial counsel. The record refutes them all, so Sanchez is not entitled to an evidentiary hearing.

### A. Ground 1: Trial counsel rejected a favorable plea offer

Sanchez claims Rosenthal communicated two plea offers to him—a 10-25 year offer and later a 25-35 year offer. Sanchez claims Rosenthal recommended declining both offers because (1) the evidence collected from Sanchez's mobile phones would likely be suppressed, (2) Sanchez's sentencing exposure would be 25-35 years if he lost at trial, and (3) going to trial would

4

preserve Fourth Amendment issues for appeal. Sanchez claims he would have pleaded guilty if Rosenthal advised he faced life in prison if he lost at trial.

The record refutes Sanchez's claim that he would have accepted a plea deal but for Rosenthal's advice. At his arraignment, Sanchez acknowledged his understanding that he could face life imprisonment if found guilty of Counts 1 and 4 of the superseding indictment. (Cr-Doc. 179 at 5-7). In the pretrial conference, the Court asked the parties whether the government extended any plea offers. The parties agreed that the government made a formal plea offer before the suppression hearing, and that the parties discussed a potential plea agreement after the Court denied Sanchez's motion to suppress. Sanchez found both proposed resolutions unacceptable. When asked about the plea negotiations, Sanchez said, "The plea offers that he's offering, no, I don't want to take those plea offers." (Cr-Doc. 180 at 5).

The record shows that Sanchez knew he faced a potential life sentence when he rejected the plea offers, and he reaffirmed his desire to reject a plea deal after the Court denied his motion to suppress. So even if Rosenthal made predictions that were ultimately incorrect, Sanchez was not misled into taking his case to trial. Ground 1 is denied.

### B. Ground 2: Trial counsel refused to let Sanchez testify

Sanchez next claims he wanted to testify in his own defense but Rosenthal would not allow it. The trial transcript refutes this claim. After the

5

government rested, the Court ensured that Sanchez understood his absolute right to testify, and that he had enough time to discuss the decision with his attorney. ([Cr-Doc. 184 at 128-29](Cr-Doc. 184 at 128-29)). Sanchez stated that he did not want to testify, and he acknowledged that it was his decision alone:

> THE COURT: And you understand that you are the one who has to make that decision ultimately? You can consider what he has to say, but you are the one that has to make the decision? You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you decided whether or not you want to testify?
>
> THE DEFENDANT: I wanted to, but I'm just going to take the advice of me not to.
>
> THE COURT: And you understand that's up to you. So if you want to testify, you can. It's just that you have to -- you can consider what your attorney has to say and then make the decision. So I want to make sure that you feel comfortable with whatever decision you are making.
>
> THE DEFENDANT: Yes. I trust him.
>
> THE COURT: All right. And is it your decision –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- that you do not want to testify?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you have had sufficient time to discuss that with him?
>
> THE DEFENDANT: Yes.

>THE COURT: And you understand that that is your decision then?
>
>THE DEFENDANT: Yes.

(Cr-Doc. 184 at 128-30). It was clearly Sanchez's decision not to testify. Ground 2 is denied.

### C. Ground 3: Trial counsel failed to file a motion to suppress evidence found on Sanchez's mobile phone

Sanchez next claims that Rosenthal failed to challenge the seizures of his cell phones and the admissibility of the evidence police found on those phones. That is not true. Rosenthal filed a motion to suppress all evidence derived from both phones and all statements Sanchez made to police. (Cr-Doc. 33). The Court held a hearing, (*see* Cr-Doc. 54), and despite Rosenthal's zealous advocacy, the Court ultimately denied the motion (*see* Cr-Doc. 59). Because it is conclusively refuted by the record, Ground 3 is denied.

### D. Ground 4: Trial counsel failed to subpoena witnesses

Finally, Sanchez claims he asked Rosenthal to call certain witnesses to testify. Sanchez's motion does not identify those witnesses, but Sanchez supplemented it with declarations from his parents, Gloria Brennan and Julian Sanchez. They were present when police first questioned Sanchez outside his home, and Brennan retrieved Sanchez's cell phone from his room at an officer's request. Both declarations include the claim, "The officers told

7

us that if we didn't comply with their orders, that we would be arrested." (Doc. 4-1; Doc. 4-2).

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever second guess." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995). Sanchez thus faces a particularly heavy burden here, and he does not carry it. The record conclusively refutes this ground. The government played a recording of the encounter between police, Sanchez, and his parents at the suppression hearing. It proved that police did not threaten to arrest Sanchez's parents, so the government could have easily refuted the testimony Sanchez proposes. (*See* Cr-Doc. 176 at 45-100). Rosenthal's decision not to call Sanchez's parents to give demonstrably false testimony was reasonable. Ground 4 is denied.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473,

484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003) (citations omitted).  Sanchez has not made the requisite showing here and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is now

**ORDERED:**

Petitioner Romeo Valentin Sanchez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1), as supplemented (Doc. 4), is **DENIED**.  The Clerk is **DIRECTED** to terminate any pending deadlines, enter judgment in favor of Respondent, and close the civil case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 18, 2024.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record